## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROGER D.,**

      **Plaintiff,**

            **v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

      **Case No. 3:20-cv-1806**
      **Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Roger D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On January 25, 2017, Plaintiff filed an application for benefits, alleging that he has been disabled since December 1, 2016. R. 153, 167, 257–60. The application was denied initially and upon reconsideration. R. 182–87, 189–91. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

administrative law judge. R. 192−93. Administrative Law Judge Ricardy Damille ("ALJ") held a hearing on February 19, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 133−52. In a decision dated April 24, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 1, 2016, his alleged disability onset date, through the date of that decision. R. 116−27. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 18, 2019. R. 1−7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 19, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On the same day, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is

3

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on his alleged disability onset date. R. 125. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. R. 118. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 1, 2016, Plaintiff's alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar, cervical, and thoracic spine disc herniation, lumbar spine radiculopathy, diabetes, retinopathy, retinal artery branch occlusion of the left eye, depressive disorder, and anxiety disorder. R. 119.  The ALJ also found that the diagnosed impairments of carpal tunnel syndrome, hypertension, and high cholesterol were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 119−21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 121−25. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a floor manager, assistant manager, and store manager. R. 125.

At step five, the ALJ found that a significant number of jobs−*i.e.*, approximately 90,000 jobs as a ticket tagger; approximately 100,000 jobs as a hand packager; approximately 200,000 jobs as an office cashier−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 126. The ALJ therefore concluded that

Plaintiff was not disabled within the meaning of the Social Security Act from December 1, 2016, his alleged disability onset date, through the date of the decision. R. 127.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 13. The Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 14.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.     Shira Sheldon, N.P.[3]

Shira Sheldon, N.P., began seeing Plaintiff on a monthly basis on March 29, 2017. R. 423. On October 23, 2017, Nurse Sheldon completed a three-page, check-the-box, and fill-in-the-blank form entitled "Medical Opinion Re: Ability to Do Physical Activities." R. 423−25 ("Nurse Sheldon's October 2017 opinion"). Nurse Sheldon diagnosed epidural lipomatosis with super imposed spondylite changes and disc protrusions at T7-T8, T8-T9, and T9-T10, with prognosis unknown at that time. R. 423. According to Nurse Sheldon, Plaintiff could walk one or more city block without resting, could sit continuously for 30 minutes at a time for a total of less than two hours, and could stand for more than two hours at a time, for a total of about two hours in an eight-hour workday. *Id*. Nurse Sheldon opined that Plaintiff needed a job that permits shifting positions at will from sitting, standing, and walking and that Plaintiff would

---

[3] As addressed later in this decision, the ALJ mistakenly refers to Nurse Sheldon as "Dr. Shelden." R. 124.

need to take unscheduled breaks every two hours throughout an eight-hour workday; Nurse Sheldon expressed no opinion as to how long Plaintiff would have to rest before returning to work. R. 423−24. Plaintiff would not need to elevate his legs with prolonged sitting and did not need to use a cane or assistive device with occasional standing/walking. R. 424. Plaintiff could occasionally lift and carry less than ten pounds and had no significant limitations in performing repetitive reaching, handling, or fingering. *Id*. Plaintiff could bend and twist at the waist about five percent of the time during an eight-hour workday. *Id*. There was no need to avoid environmental hazards. R. 425. According to Nurse Sheldon, Plaintiff could occasionally (defined as less than one-third of the workday) crouch, but could never twist, stoop (bend), climb stairs, or ladders. *Id*. She further opined that Plaintiff's impairments were likely to produce "good days" and "bad days" and that Plaintiff's impairments or treatment would cause him to be absent from work more than twice per month. *Id*.

     **B.**    **Harvey Weingarten, M.D.**

     In November 2018, Plaintiff's treating physician, Harvey Weingarten, M.D., completed a three-page, check-the-box, and fill-in-the-blank form entitled "Medical Opinion Questionnaire Physical Activities." R. 440−42 ("Dr. Weingarten's November 2018 opinion"). Dr. Weingarten left blank the question asking for the nature, frequency, and length of his contact with Plaintiff.[4] R. 440. Dr. Weingarten diagnosed thoracic disc herniation with a prognosis of "pain." *Id*. He opined that Plaintiff could not walk a city block without rest, could sit continuously for 30 minutes at a time, and stand continuously for 10 minutes at a time, and could sit and stand/walk for less than two hours total in an eight-hour workday. *Id*. According to Dr. Weingarten,

---

[4] The Court notes that a progress note dated March 29, 2017, from Dr. Weingarten reflects that Plaintiff was a "new patient[.]" R. 655.

Plaintiff needed a job that permitted him to shift positions at will from sitting, standing, or walking and would need to take hourly 15-minute breaks throughout an eight-hour workday. *Id*. Plaintiff did not need to elevate his legs with prolonged sitting. *Id*. However, Dr. Weingarten opined that Plaintiff needed a cane or assistive device while engaged in even occasional standing/walking. R. 441. According to Dr. Weingarten, Plaintiff could occasionally (defined as less than one-third of the workday) lift and carry less than ten pounds but could never lift or carry ten pounds or more. *Id*. Plaintiff also had significant limitations in performing repetitive reaching, handling, or fingering, could use his hands/fingers/arms 100 percent of the time for grasping, turning, twisting objects, fine manipulations, and reaching (including overhead). *Id*. Plaintiff could bend and twist at the waist ten percent of the time during an eight-hour workday. *Id*. Dr. Weingarten also opined that Plaintiff must avoid exposure to extreme cold, extreme heat, cigarette smoke, soldering fluxes, solvents/cleaners, and chemicals, but not high humidity, fumes, odors, dusts, gases, or perfumes. R. 442. According to Dr. Weingarten, Plaintiff could occasionally twist and climb stairs, but could never stoop (bend), crouch, or climb ladders. *Id*. Moreover, Plaintiff's impairments were likely to produce "good days" and "bad days" and his impairments and treatment would cause Plaintiff to be absent from work more than twice in a month. *Id*.

## V.   DISCUSSION

### A.   RFC and Evaluation of Medical Opinions

Plaintiff contends that the ALJ erred in crafting Plaintiff's RFC. *Plaintiff's Brief*, ECF No. 13, pp. 20–27. Plaintiff specifically argues that the ALJ erred in weighing the opinions of his treating physician, Harvey Weingarten, M.D., and treating nurse practitioner, Shira Sheldon, N.P., resulting in a RFC unsupported by medical opinion and based on the ALJ's lay opinion. *Id*.

Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform light work with certain additional exertional and nonexertional limitations, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can stand and/or walk for a total of four hours in an eight-hour workday. Additionally, the claimant can occasionally balance, stoop, kneel, crouch, push and/or pull with his bilateral upper extremities and climb ramps and stairs but can never crawl or climb ladders, ropes and scaffolds. He can frequently handle and finger with his hands bilaterally. In terms of visual acuity, the claimant can frequently utilize near acuity vision but only occasionally utilize far acuity and depth perception. Lastly, he is able to understand, remember and carry out simple instructions.

11

R. 123. In making this determination, the ALJ detailed years of record evidence regarding Plaintiff's musculoskeletal impairments, including, *inter alia*, Dr. Weingarten's records from March 2017, reflecting that Plaintiff demonstrated a normal gait and normal muscle strength in all extremities and normal range of motion; a June 2017 consultative examination performed by Mariam Rubbani, M.D., reflecting findings consistent with carpal tunnel syndrome in Plaintiff's hands and cervical, thoracic and lumbar myofascial spasms, but no objective signs of peripheral neuropathy, findings of full grip and pinch strength bilaterally and an ability to separate papers, signs consistent with thoracic and lumbar facet dysfunction and sacroiliitis, limited range of motion of the hips primarily due to lower back pain, but full range of motion in the cervical spine despite muscle spasm in the cervical region, a positive Spurling's maneuver on the right side but negative on the left, tenderness of the thoracic spine on palpation and limited range of motion of the lumbar spine, but normal gait and pace; an August 2017 consultative mental examination performed by AnnaMarie Resnikoff, M.D., noting that Plaintiff had no difficulty walking in and out of the examination room and no difficulty remaining seated for the duration of the examination; Dr. Weingarten's October 2018 findings on examination of tenderness in Plaintiff's thoracic spine and Dr. Weingarten's diagnosis of, *inter alia*, lumbar radiculopathy, but finding that Plaintiff was in no acute distress during the examination and exhibited a normal range of motion in all extremities with normal strength, sensation and gait; Dr. Weingarten's November 2018 diagnosis of, *inter alia*, a herniated thoracic disc without myelopathy, and notation of chronic disc pain, with treatment in the form of prescribed pain medication. R. 122–23.

The ALJ also detailed record evidence regarding Plaintiff's mental impairments, including, *inter alia*, Dr. Resnikoff's August 2017 consultative mental examination during which Plaintiff appeared tearful and depressed, but which revealed no significant abnormalities.

Specifically, Dr. Resnikoff noted that Plaintiff was pleasant and cooperative and made appropriate eye contact, demonstrated the ability to complete serial sevens, and demonstrated normal recall. According to Dr. Resnikoff, Plaintiff was appropriately oriented in all spheres and denied suicidal or homicidal ideation; Dr. Resnikoff noted no abnormalities with Plaintiff's concentration. The ALJ also noted that, aside from the consultative examination performed by Dr. Resnikoff, Plaintiff had received little to no mental health treatment and that Dr. Weingarten had commented that Plaintiff had no mental limitations. R. 123–25.

The ALJ to explain the RFC determination as follows:

In sum, the above residual functional capacity assessment is supported by the medical records that indicate the claimant's musculoskeletal impairments, diabetes, visual impairments and mental impairments would limit him to less than a full range of light exertion. Additionally, his mental limitations, as described in the medical records, would limit his ability to understand, remember, socially interact and deal with changes to his essential job functions as outlined in the residual functional capacity. As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the records indicate generally unremarkable examination findings (Exhibits 4F, 5F, 15F, 17F, 19F and 20F).

R. 125. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this RFC determination, arguing that the ALJ erred when assessing Dr. Weingarten's November 2018 opinion and Nurse Sheldon's October 2017 opinion. *Plaintiff's Brief*, ECF No. 13, pp. 20–27. Plaintiff's arguments are not well taken.

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically,

13

the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make

speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6).[5] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

---

[5] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017). Plaintiff filed his claim in January 2017.

In addition, "[n]urses are not 'acceptable medical sources' under the regulations for claims filed before March 27, 2017." *Williams v. Saul*, No. CV 17-00234, 2019 WL 5061239, at *3 (D.N.J. Oct. 9, 2019).[6] Opinions from those who are not acceptable medical sources "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1). When considering opinions from non-acceptable medical sources, an ALJ may refer to the factors identified in 20 C.F.R. § 404.1527(c), but need not refer to every such factor. 20 C.F.R. § 404.1527(f)(1). However, an ALJ is not required to consider opinions from those who are not acceptable medical sources. *Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 361–62 (3d Cir. 2011) (stating that "the ALJ was not required to consider [the nurse practitioner's] opinion at all because, as a nurse practitioner, she is not an 'acceptable medical source'"); *Favors v. Berryhill*, No. CV 18-234, 2019 WL 928417, at *8 (D.N.J. Feb. 26, 2019) ("[I]n fact, the ALJ was not *required* to consider [the advanced practice nurse's] opinion at all.") (emphasis in the original) (citing *Chandler*, 667 F. 3d at 361–62).

Here, the ALJ assigned "little weight" to Dr. Weingarten's November 2018 opinion and to Nurse Sheldon's October 2017 opinion, reasoning as follows:

> In a statement from October 2017, Dr. Shelden [sic][7] opined that the claimant could to [sic] sit for a total of less than two hours and stand and/or walk for two hours over the course of an eight-hour workday. Dr. Shelden [sic] further stated that the claimant would need to shift positions at will from sitting, standing or walking and that the claimant could occasionally lift and carry less than ten pounds but failed to indicate if the claimant could lift ten pounds or more. In terms of postural activities, Dr. Shelden [sic] opined that the claimant could occasionally crouch but never

---

[6] "For claims filed after March 27, 2017, licensed advanced practice registered nurses and licensed physician assistants are considered acceptable medical sources for impairments within their licensed scope of practice." *Williams v. Saul*, No. CV 17-00234, 2019 WL 5061239, at *3 (D.N.J. Oct. 9, 2019) (citing 20 C.F.R. § 416.902(a)(7)–(8)). As previously noted, Plaintiff's claim was filed on January 25, 2017.

[7] Neither party notes the ALJ's mistaken reference to Nurse Sheldon as a physician.

16

twist, bend, or climb stairs and ladders. Lastly, Dr. Shelden [sic] opined that the claimant's impairments would cause him to be absent from work more than twice per month (Exhibit 8F). I assign this opinion little weight, as the evidence does not support the degree of limitations noted. Furthermore, I note that the claimant has received only conservative treatment for his musculoskeletal impairments and physical examinations have consistently shown that the claimant's gait, muscle strength and sensation throughout his extremities were all normal (Exhibits 4F, 5F, 15F, 17F and 19F).

In November 2018, Dr. Weingarten also provided an opinion regarding the claimant's functional limitations. He opined that the claimant could to [sic] sit and stand and/or walk for a total of less than two hours each, over the course of an eight-hour workday. Dr. Weingarten further stated that the claimant would need to shift positions at will from sitting, standing or walking and that the claimant could occasionally lift and carry less than ten pounds, but would be unable to lift ten pounds or more. In terms of manipulative limitations, he opined that the claimant's ability to perform repetitive reaching, handling or fingering was significantly limited, however, when asked to assess the percentage of time during an eight-hour work day that the claimant could perform said manipulations, Dr. Weingarten indicated "100%" for all activities bilaterally. Lastly, Dr. Weingarten opined that the claimant could occasionally twist and climb stairs but could never stoop, crouch or climb ladders and that his impairments would result in him being absent from work more than twice per month (Exhibit 10F). Again, for the same reasons articulated in assessing Dr. Shelden's [sic] opinion, I assign this opinion little weight.

R. 124.

Plaintiff argues that the ALJ's evaluation of Dr. Weingarten's November 2018 opinion was deficient, disagreeing with the ALJ's characterization of normal findings and pointing to other evidence in the record that he believes supports his position. *Plaintiff's Brief*, ECF No. 13, pp. 21–22. Plaintiff's arguments are not well taken. A review of the medical record reveals that the ALJ fairly characterized the physical examination findings. Although Plaintiff points to some contrary evidence in the record, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d

17

at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Davison v. Comm'r of Soc. Sec.*, No. CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."); *Lewis v. Comm'r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("Though the Plaintiff accuses the ALJ of cherry-picking evidence, it actually appears that the Plaintiff is the one guilty of cherry-picking since the bulk of the medical record seems to indicate minimal issues with executive function and mental capabilities."). The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose Plaintiff's or this Court's own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff also characterizes the ALJ's statement that the findings on physical examination were "mostly normal" as nothing more than a layperson's observation or evidence of the ALJ interpreting "raw medical data." *Plaintiff's Brief*, ECF No. 13, pp. 22−23, 27. The Court rejects this characterization. As the ALJ's recitation of the various status examinations accurately notes, the practitioners themselves described their own findings as essentially normal. R. 122 (citing, *inter alia*, Ex. 15F [R. 496−663] (containing Dr. Weingarten's progress notes from March 29,

2017, through November 13, 2018, reflecting, *inter alia*, "Gait and station: Normal[,]" R. 505, 523, 533, 551, 558, 565, 602, 645, 651; "Muscle strength/tone: Normal[,]" R. 544, 645, 651; "Inspection/palpation of joints, bones, and muscles: Normal[,]" R. 505, 523, 533; "Range of motion: Normal upper and lower extremity ROM[,]" R. 515, 543, 593, 618, 637, 645, 651)); R. 123 (citing, *inter alia*, Ex. 4F [R. 381–87] (reflecting, *inter alia*, Dr. Rubbani's note that "Gait is tandem. Heel-to-toe, mildly antalgic. He does not use a handheld assistive device. Gait is reasonably paced[,]" R. 382; Ex. 5F [R. 388–91] (reflecting, *inter alia*, Dr. Resnikoff's note that Plaintiff "had no difficulty walking in and out of this room" and "had no difficulty remaining seated for this examination[,]" R. 389; Ex. 15F [R. 496–663] (reflecting normal findings as noted above)); R. 124 (citing, *inter alia*, Exs. 4F, 5F, 15F (reflecting normal findings as noted above); Ex. 19F [R. 670–80] (containing notes from Outlook Eyecare reflecting, *inter alia*, "Negative" musculoskeletal findings, R. 674)).

In continuing to challenge the ALJ's RFC determination in light of the ALJ's discounting of Dr. Weingarten's opinion, Plaintiff questions the medical bases of the RFC found by the ALJ. *Plaintiff's Brief*, ECF No. 13, pp. 22–23, 27 (citing R. 20). However, as previously noted, it is the ALJ–not treating or examining physicians or state agency physicians—who makes the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. Moreover, as detailed above, the ALJ relied on specific medical findings by various practitioners when crafting the RFC.

Plaintiff goes on to argue that "Plaintiff's treatment cannot be accurately characterized [by the ALJ] as 'conservative.' It has included steroid injections into the spine" and Plaintiff "has also been prescribed numerous high doses of opioid pain medications." *Plaintiff's Brief*, ECF No. 13, pp. 23–24 (citing out of circuit cases). This Court disagrees. Courts in this circuit have

characterized medication management and injections as conservative treatment. *See Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245–46 (3d Cir. 2020) (characterizing injections as "relatively routine and conservative treatment"); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy"); *Herman v. Colvin*, No. CIV.A. 12-6640, 2013 WL 6909915, at *8 (D.N.J. Dec. 31, 2013) ("The ALJ also emphasized the conservative methods by which Plaintiff was treated. The record evidences treatment of pain medications, injections, and chiropractic treatment.").

Equally unavailing is Plaintiff's contention that the ALJ failed to provide good reasons for refusing to give Dr. Weinstein's November 2018 opinion controlling weight. *Plaintiff's Brief*, ECF No. 13, pp. 24−25 (citing, *inter alia*, 20 C.F.R. § 404.1527). As a preliminary matter, "[a]n ALJ need not explicitly discuss each factor [ under 20 C.F.R. § 404.1527] in his [or her] decision." *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *6 (D.N.J. Jan. 31, 2019); *Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) (same) (collecting cases). "Instead, an ALJ need only 'explain his evaluation of the medical evidence for the district court to meaningfully review whether his [or her] reasoning accords with the regulation's standards.'" *Samah*, 2018 WL 6178862, at *5 (quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)); *see also Jones*, 364 F.3d at 505 (stating that the ALJ is not required to "use particular language or adhere to a particular format in conducting his [or her] analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"); *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("Although the ALJ did not specifically identify each factor [under 20 C.F.R. § 404.1527(c)], all relevant factors were

considered throughout the lengthy, detailed opinion.") (citations omitted). The ALJ did just that in this case. Although the ALJ did not explicitly go through a factor-by-factor analysis, she specifically considered Dr. Weingarten's numerous examinations of and treatment of Plaintiff from 2017 through February 2019, at step four of the sequential evaluation. *See* R. 123−24; 20 C.F.R. § 404.1527(c)(1), (2). In addition, as detailed above, the ALJ explained that she discounted Dr. Weingarten's November 2018 opinion because the evidence, including the evidence of conservative treatment for musculoskeletal impairments and physical examinations revealing normal gait, muscle strength, and sensation throughout Plaintiff's extremities, did not support the degree of limitations in that opinion. R. 124; *see also* 20 C.F.R. § 404.1527(c)(3), (4), (6); *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history as a factor that supported the ALJ's determination to discount the claimant's subjective complaints); *Kiefer v. Saul*, No. CV 19-547, 2020 WL 1905031, at *3 (W.D. Pa. Apr. 17, 2020) (finding that the ALJ gave "valid and acceptable reasons for discounting the weight accorded" to treating opinion because those opinions were, *inter alia*, "inconsistent with the conservative approach to her treatment") (citing 20 C.F.R. §§ 404.1527, 416.927); *cf. Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (finding that the "ALJ adequately evaluated the opinions from [the claimant's] treating physicians and put forth sound reasons supported by substantial evidence" where the ALJ assigned only partial weight to a treating physician whose conservative course of treatment (ibuprofen) did not support absences from work twice a month).

Finally, conceding that Nurse Sheldon is not an acceptable medical source, Plaintiff nevertheless contends that the ALJ failed to "properly consider[]" her October 2017 opinion. *Plaintiff's Brief*, ECF No. 13, pp. 25−26. This Court disagrees. As set forth above, nurses are not

acceptable medical sources under the regulations for claims filed before March 27, 2017, and, therefore, an ALJ is not required to consider such opinions. *Chandler*, 667 F.3d at 361–62. In addition, although an ALJ may refer to the factors identified in 20 C.F.R. § 404.1527(c), the ALJ need not refer to every such factor. 20 C.F.R. § 404.1527(f)(1). Here, the ALJ specifically considered Nurse Sheldon's October 2017 opinion and discounted it for the same reasons that the ALJ discounted Dr. Weingarten's November 2018 opinion, *i.e.*, because the evidence, including conservative treatment for musculoskeletal impairments and physical examinations revealing normal gait, muscle strength, and sensation throughout Plaintiff's extremities, did not support the degree of limitations in her opinion. R. 124. Accordingly, for the reasons explained above, this Court concludes that the ALJ properly evaluated Nurse Sheldon's October 2017 opinion in accordance with the applicable regulations and case authority.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Weingarten's November 2018 opinion and Nurse Sheldon's October 2017 opinion.

## B. Subjective Complaints

Plaintiff also contends that the ALJ erred in evaluating his subjective complaints, complaining that the ALJ relied on lay conclusions and boilerplate language, and failed to properly explain her reasons for discounting Plaintiff's complaints. *Plaintiff's Brief*, ECF No. 13, pp. 27–31. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

23

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[8]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 122, 125. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but the ALJ also found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 125. As previously discussed, the ALJ detailed the medical evidence and other evidence to support her findings. R. 122–25. In considering this evidence, the ALJ explained as follows: "As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the records indicate generally unremarkable examination findings (Exhibits 4F, 5F, 15F, 17F, 19F and 20F)." R. 125. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286. Accordingly, the Court finds that the ALJ sufficiently explained the reasoning applied in evaluating Plaintiff's subjective complaints and her findings are entitled to this Court's deference. *See id.*; SSR 16-3p.

---

[8] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

### C.      Step Five

Plaintiff also challenges the ALJ's step five determination, arguing that the Acting

Commissioner failed to carry her burden at that stage because the hypothetical questions posed to

the vocational expert, which included the ALJ's RFC determination, failed to include all of

Plaintiff's claimed limitations. *Plaintiff's Brief*, ECF No. 13, pp. 31−33. Plaintiff specifically

contends that the hypothetical failed to accommodate moderate limitations in concentration,

persistence, and pace. *Id*. at 32−33 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir.

2004)). Plaintiff's arguments are not well taken.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). Unlike in the first four steps of the sequential

evaluation, it is the Commissioner who bears the burden of proof at step five. *Hess v. Comm'r*

*Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205

(3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory

testimony from a vocational expert is often sought by the ALJ for that purpose [of determining

whether other jobs exist in significant numbers in the national economy that the claimant could

perform] . . . and factors to be considered include medical impairments, age, education, work

experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of

vocational experts in disability determination proceedings typically includes, and often centers

upon, one or more hypothetical questions posed by the ALJ to the vocational expert."

*Podedworny,* 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with

the same physical and mental impairments as the claimant can perform certain jobs that exist in

the national economy." *Zirnsak*, 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While

'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the relevant hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 121, 148. The vocational expert responded that the jobs of ticket tagger, hand packager, and office cashier would be appropriate for such an individual. R. 148. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554;

*Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical question is that it did not address all his alleged impairments, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

Finally, Plaintiff's reliance on *Ramirez*, 372 F.3d at 554, is unavailing to the extent that he contends that the limitation to simple instructions does not adequately capture his moderate limitation in concentration, persistence, or pace. *Plaintiff's Brief*, ECF No. 13, pp. 31–33. "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (explaining that this conclusion "flows directly from our decision in *Ramirez*"). Plaintiff, however, insists that *Hess* is distinguishable from the instant case because the ALJ did not offer a "valid explanation," *Plaintiff's Brief*, ECF No. 13, p. 33 n.42. This Court disagrees. Here, the ALJ did indeed offer a "valid explanation" for the finding that Plaintiff would be limited to simple instructions, expressly relying on, *inter alia*, Dr. Resnikoff's benign findings upon a mental consultative examination, including normal recall and no abnormalities with concentration noted, R. 124, Plaintiff's lack of mental health treatment, *id.*, and Dr. Weingarten's opinion that Plaintiff had no mental limitations, R. 125. Accordingly, based on this record, *Ramirez* does not require remand or otherwise undermine that RFC finding or the Commissioner's finding at step five.

In short, the Court finds that the Acting Commissioner has carried her burden at step five of the sequential evaluation and concludes that substantial evidence supports her determination in this regard.

## VI.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 15, 2021                          *s/Norah McCann King*
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE

28